ALBANY,
JAN. 1815.

MERRITT
v.
CLASON.

---

## MERRITT AND MERRITT *against* CLASON.

A memorandum of a contract for the purchase of rye, written by the broker employed to make the purchase, with a lead pencil, in his book, in the presence of the vendor, the names of the vendor and vendee, and the terms of the purchase, being in the body of the memorandum, but not subscribed by the parties; it was held to be a sufficient memorandum in writing within the statute of frauds. (Sess. 10. c. 44. s. 15.) The authority of the agent need not be in writing. A broker is the agent of both parties; and the neglect of the agent to give a copy of the memorandum of the contract to the vendee will not affect the rights of the vendor.

THIS was an action of *assumpsit*, tried at the *New-York* sittings, in *April* last, before Mr. Justice *Yates*.

*John Townsend*, a witness for the plaintiffs, testified that he was a broker, and was employed by the defendant to purchase rye. On the 18th of *February*, 1812, he applied to *Isaac Wright & Son*, the agents of the plaintiffs, in *New-York*, and agreed to purchase of them 10,000 bushels of rye, at one dollar per bushel, and they authorized him to sell the same to the defendant, on the terms agreed on; the witness informed the defendant of the terms of sale, and was directed by him to make the purchase accordingly. The witness then went to *Wright & Son*, and closed the bargain with them, as agents of the plaintiffs, and in their presence wrote in his memorandum-book, with a lead-pencil, as follows: "*February* 18th, bought of *Daniel & Isaac Merritt*, (the plaintiffs,) by *Isaac Wright & Son*, 10,000 bushels of good merchantable rye, at one dollar per bushel, deliverable in the last ten or twelve days of *April* next, along side any vessel or wharf the purchaser may direct, for *Isaac Clason*, of *New-York*, payable on delivery." All the other *memoranda* in the same book were written with a lead pencil. Soon after the purchase was thus completed, the witness informed the defendant of it, but did not give him a copy of the memorandum.

The plaintiff repeatedly tendered the rye to the defendant,

according to the terms of the agreement, particularly on the 14th and 30th days of *April*, and the defendant refused to accept any pay for it. On the 1st of *May*, the plaintiffs addressed a letter to the defendant, giving him notice, that unles she received and paid them for the rye, according to the contract, they should, on *Tuesday*, (the 4th of *May*,) at noon, cause the same to be sold at public auction, at the *Tontine* coffee-house, and hold him accountable for the deficiency, if it should sell for less than the price mentioned in the contract, and the expenses. The defendant continuing to refuse to receive the rye, or to pay for it, it was, according to the notice, sold at public auction, and the present suit was brought to recover the difference between the net proceeds of such sale and the contract price.

A verdict was taken for the plaintiff, subject to the opinion of the court on a case containing the facts above stated, and which either party was to be at liberty to turn into a special verdict.

*Wells*, for the plaintiffs. The points in this cause have been repeatedly discussed and settled. *Townsend*, the broker, acted as the agent of both parties; as such agent he was competent to make a contract obligatory on both. It is distinctly stated that he was an agent for both parties; besides, he was a broker, and, as such, is the agent of both.

To make the contract valid, within the statute of frauds,[*] it is not necessary that the writing should be actually signed by the party or his agent. *Signing* does not, *ex vi termini*, mean that the name of the party should be *subscribed*. It is enough if the contract be in writing, and authenticated by him. The name may be at the top, or in any part of the contract or instrument.[†] In *Wright* v. *Darmah*,[‡] the distinction is made between a memorandum made by one of the parties, and assented to by the other, and a memorandum made by a third person. The written memorandum, in this case, contained every thing that was necessary to show the contract between the parties. No parol evidence was requisite, to explain their intention, or the terms of the agreement. This is the true test of the validity of a contract, under the statute of frauds. The authority of the agent need not be in writing.[§]

[*] Sess. 10. c. 44. s. 15. 29 Car. II. c. 3. s. 17.

[†] 2 Bos. & Pull. 238. 3 Lev. 1. 7 Vesey, 265. 9 Vesey, 249. 1 Esp. Cas. 190. 1 P. Wms. 770. n. 7 East, 558. 3 Burr. 1921. 1 Esp. Rep. 105. 5 Esp. Rep. 256. 1 Vesey, 82. Bailey & Bogert v. Ogden, 3 Johns. Rep. 399.

[‡] 2 Campbell, 203. 15 East, 103.

[§] 5 Vin. Ab. 524. Contract, &c. (H.) pl. 45. 9 Ves. jun. 251. 1 Schoales & Lefroy's Rep 31. 1 Esp. Rep. 105.

*Baldwin*, contra. How a person can be the agent of both parties, is not easy to comprehend. An auctioneer is no further the agent of the purchaser than to put down his bid. A broker, if he is agent for the vendor, is bound to sell for the highest price; if he is agent for the buyer, it is his duty to purchase at the lowest price that can be obtained. He is, in such case, acting in two distinct characters, having distinct duties to perform, in direct opposition to each other. The *English* courts have proceeded on erroneous principles, in regard to this subject.

Again, as to *bought and sold notes*, as they are called, the mere memorandum in the broker's book is not enough. He must give a copy of the note to the buyer, and another to the seller. Besides, the place of delivery is not mentioned in the contract.

*2 Bos. & Pull.
(1 N. S.) 252.*

In *Champion* v. *Plumer*,* it was held, that a memorandum signed by the seller only was not sufficient. The plaintiffs, in this case, were not bound, and if they were not, neither can the defendant be bound.

† *15 East*, 103.

In *Cooper* v. *Smith*,† there was no signature of either party, and the court held, that the reading over the memorandum to the purchaser, and his assenting to it, was not sufficient to bind him.

Again, the *memorandum*, in this case, was written with a *lead pencil*. Is this such a writing as was intended by the statute of frauds? If it is, then a writing on a slate, or with chalk, on a door or wall, would be a good memorandum within the statute. It may be completely effaced, in a moment, with a piece of *India* rubber, and another contract written in its place without the possibility of detecting the fraud. This would not be the case if it were written with ink. Such a writing, in pencil, cannot satisfy the object of this statute. It is no better than tracing characters in the sand.

It is said that the signature of the party is not requisite. But where are the cases in which such a doctrine is to be found? In the cases relative to *wills*, the devise was written by the testator, though not subscribed by him. If an instrument or memorandum is not written by a party, its not being signed or subscribed by him, is evidence that he does not intend it to be regarded as his contract. It would be extremely injurious to

give authority to brokers to bind parties, by such loose memo-

randa of a contract.

*D. B. Ogden*, on the same side. I do not deny, that, accord-ing to the cases decided, a *broker* is to be considered as the agent of both parties, and that his authority need not be in writing. But to make a valid agreement within the statute of frauds, the writing must be signed by the party himself who is to be charged, or by his authorized agent. If the contract is made by the principal, it must be signed by him; if by his agent, it must be signed by the agent. I do not say it must be *subscribed*, but it must be signed in some part of the contract. In *Clinan* v. *Cooke*,\* the agreement was signed by the agent, and it being shown that he was an agent, his principal was held to be bound.

\* 1 *Schoales & Lefroy's Rep.* 22.

In all the cases cited, where the agreements were held bind-ing, it will be found that they were signed by the agent, who delivered a *note* of the bargain and sale. The point raised here was not discussed or decided in *Bailey* v. *Ogden*.

Again; it is worthy of consideration what sort of writing was intended by the statute, which was made to prevent frauds that might arise from trusting to the memory of witnesses, by re-quiring a permanent and unchangeable evidence of the con-tract. A writing in *ink* is indelible, or if effaced and altered, the erasure or alteration may be easily detected, which would not be the case of a writing with a lead pencil.

*S. Jones*, jun. in reply. The object of the statute of frauds was, that the *terms* of the contract should be precise and cer-tain, and properly authenticated. If these essential points are obtained, the statute pays little regard to form. *Isaac Clason*, the purchaser, by *Townsend*, his agent, is mentioned in the memorandum, and that is a sufficient signing. It is not neces-sary that the agent should sign as agent, when he puts down the name of his principal. Besides, the agent informed *Clason* of the contract, and he made no objection to it.

The broker is the *go-between* of the parties. He goes to the vendor and inquires his price; he then goes to the vendee, to know if he will give the price demanded, and if he assents, he concludes the bargain with the vendor. Here is no conflict of

duties. His agency for both parties is clear and simple. He is the means of communication between them. They speak and act through him. He stands indifferent between them. The case of *Cooper* v. *Smith,* turned on the sufficiency of the memorandum, not on the signing of the party or his agent.

Either party may demand a copy of the memorandum from the broker. As to the danger of fraud, from the memorandum being written with a lead pencil, the same danger would exist, if it were written in ink. If the broker were disposed to be fraudulent, he might easily contrive to alter the agreement, or substitute another in its place. But this danger wholly ceases, where each party has a copy of the note or memorandum made by the broker. And it is a rule of convenience in *England,* but not an indispensable requisite, that copies of the memorandum should be delivered to the parties.

PLATT, J. delivered the opinion of the court. The only point is, whether the memorandum, made by *John Townsend,* was a sufficient memorandum of the contract, within the statute of frauds, to bind the defendant.

It is objected by the defendant's counsel,

1. That the memorandum is not "*in writing,*" being made with a *lead pencil* only.

2. That it is not "*signed*" by the defendant, nor by his agent.

3. That it is not binding on the defendant, because his agent did not furnish him with a copy of it.

I have no doubt that the *memorandum* required by the statute, may as well be written with a lead pencil as with a pen and ink; and it is observable that in most of the reported cases on this head, the *memoranda* were written with a lead pencil, and no counsel, until now, has ever raised that objection.

I think it clear, also, from the authorities, that this memorandum was *signed* according to the statute.

It is not disputed, that the authorization of the agent, for such purpose, need not be in writing. In the body of this memorandum the name of *Isaac Clason,* the defendant, is written by his agent, whom he had expressly authorized to make this contract. The memorandum, therefore, is equally binding on the defendant as if he had written it with his own hand;

and if he had used his own hand, instead of the hand of his agent, the law is well settled that it is immaterial, in such a case, whether the name is written at the top, or in the body, or at the bottom of the memorandum. It is equally a *signing* within the statute. (*Saunderson* v. *Jackson and another*, 2 *Bos. & Pull.* 237. 1 *Esp.* 199. 1 *P. Wms.* 770. note 1.)

The third objection is absurd. If the *defendant's* agent neglected his duty, in not furnishing his employer with a copy of this memorandum, it certainly cannot affect the rights of the *plaintiffs*, under that agreement.

The memorandum states with reasonable certainty every essential part of the agreement. The court are of opinion that the plaintiffs are entitled to judgment.

Judgment for the plaintiffs.