## STEPHEN HODGKINS *versus* WILLIAM M. BOND.

Where A. and B. gave a note to C., and afterwards, in order to obtain further day of payment, agreed to obtain D. to guaranty the payment of it, and D. accordingly put his name on the note in blank, and said he was holden, and C. afterwards wrote a guaranty over D.'s name, it was held not to be a memorandum in writing signed by the party, within the meaning of the statute of frauds.

THIS was an action of *assumpsit*, founded upon the promise of the defendant to guaranty the payment of a note for 130 dollars, dated November 13, 1810, made by *Rufus* and *John Houghton*, and payable to the plaintiff, or order, on demand, with interest. The cause was tried here at October term, 1816, upon the general issue, when the plaintiff produced the note mentioned in the declaration, which was admitted to have been made by the *Houghtons*, and proved that previous to the 20th February, 1811, he delivered it to one *Jos. S. Corbin* to be collected, and that on the said 20th February, 1811, *Corbin* demanded payment from the *Houghtons*, who said they would not pay then, but would give security for the payment, if *Corbin* would give them time. To this *Corbin* agreed; upon which one of the *Houghtons* went out, and soon after returned with the defendant, who wrote his name in blank on the back of the note, and said he was holden. Some time afterward *Corbin* wrote on the back of the note, over the defendant's name, as follows:

"Feb. 20, 1811. I hereby, for value received, guaranty the payment of the within note to *Stephen Hodgkins*."

A verdict was taken for the plaintiff, by consent, subject to the opinion of the court upon the foregoing facts.

*J. H. Hubbard*, for the defendant, contended that this was a promise to pay the debt of another, within the statute of frauds, and that the endorsement on the back of the note could not be considered as a memorandum in writing, signed by the party to be charged, within the meaning of the statute.

*J. Wilson*, for the plaintiff, relied upon the case of *Ullen* vs. *Kittredge*, 7 *Mass. R.* 233, as directly in point.

The opinion of the court was delivered by

BELL, J.—This is not an action against the party to the original contract, but is clearly distinguishable from that class of cases(1). Nor is it an action against one who put his name upon a blank paper, and delivered it to another, with authority to make him a party to an original contract(2). But the undertaking of the defendant must be considered as collateral to the original contract. It was strictly a promise to pay an existing debt of another(3). And this action cannot be maintained, unless there is some memorandum in writing of the contract, signed by the defendant, as required by the statute of frauds.

Our statute(4) declares "that no action shall be brought "whereby to charge the defendant upon any special promise "to answer for the debt, default or miscarriage of another, "unless such promise or agreement, or some memorandum "or note thereof, be in writing, and signed by the party to "be charged therewith, or some other person thereto by him "lawfully authorized." The question then is, can this contract be considered as in writing, and is the writing signed by the defendant within the meaning of the statute? The object of this statute was to guard against the frauds and perjuries that were likely to arise from permitting contracts of certain descriptions to be proved by parole testimony; and it cannot be doubted that it was the intention of the makers of the statute that the memorandum should be evidence of the terms of the contract, and that it was for the purpose of giving authenticity to the writing, that the statute required it to be signed by the party to be charged, or his agent. We apprehend that no memorandum can be deemed sufficient, to which the signature of the party or his agent has not in some way given authenticity as evidence of the terms of the contract. It is immaterial where the signature is placed, whether it be written or printed, whether it be as a party or a witness, and whether it be made before the contract is reduced to writing or afterwards, provided the party assent to it after it is written; for such assent to a writing to which his name is placed is tantamount to signing. But the

Hodgkins
*vs.*
Bond.

(1) 3 *Mass. R.* 274, *Joselyn* vs. *Ames.*—9 *Mass. R.* 314, *White* vs. *Howland.*—6 *Mass. R.* 519, *Hunt* vs. *Adams.*—5 *Mass. R.* 358.—13 *John.* 175, *Nelson* vs. *Dubois.*—11 *Mass. R.* 436, *Moies* vs. *Bird.*—8 *Johnson* 29, *Leonard* vs. *Vredenburg.*

(2) *Douglass* 514, *Russell* vs. *Langstaff.*—1 *W. Blackstone* 313, *Collis & al.* vs. *Emett.*—5 *Cranch* 142, *Violett* vs. *Patton.*

(3) 2 *Wilson* 94, *Fisk* vs. *Hutchinson.*—1 *Wilson* 305, *Read* vs. *Nash.*—2 *Espin. Cases* 483, *Winckworth* vs. *Mills.*—1 *Saund.* 211, *nt.* 2.—5 *East* 10, *Wain & al.* vs. *Warllers.*—2 *Selwyn N. P.* 732.—1 *Schoales & Lef.* 22, *Clinan* vs. *Cooke.*

(4) *Statute of Feb.* 10, 1791, *sec.* 1.—1 *N. H. Laws,* 178.

Hodgkins
*vs.*
Bond.

signature must, under all the circumstances, have the effect to give authenticity to the writing as evidence, otherwise it is not sufficient(5). Any admission of a party that the contents of a particular writing are true, will give such writing sufficient authenticity to make it evidence against such party, though he has not signed it. But this authenticity is not sufficient to satisfy the statute. Writings under the statute must have such authenticity that they can neither be contradicted nor explained by parole testimony. *Phillips*, in his treatise on evidence, 436, speaking of agreements which the statute of frauds requires to be in writing, says, "they are not to be "contradicted or added to, or substantially varied by parole "evidence; for such evidence would defeat the statute and "introduce that uncertainty which it was the object of the "legislature as far as possible to suppress." The same doctrine is laid down in all the books(6).

That simply writing a name in blank on the back of a note gives no authenticity whatever to any thing that may afterwards be written over it, when he who writes his name was not before a party to the note, we apprehend admits of no doubt. In the case of *Joselyn* vs. *Ames*, 3 *Mass. R.* 274, the court say, "the plaintiff cannot recover in this action; "but, according to the facts reported, he may cancel what "he has written upon the note, and instead thereof may "write—*For value received I undertake to pay the money* "*within mentioned to E. J.*; and upon that endorsement "he may maintain an action on *the facts reported*." So, too, in the case of *Birchard* vs. *Bartlett*, 14 *Mass. R.* 279, it appears from the statement of facts, that the note had been endorsed in blank by the defendant to the plaintiff for a valuable and adequate consideration; and it also appears from the case that an undertaking and promise had been written over the defendant's name, endorsed on the note, that the contents of the note should be paid to the plaintiff, according to its tenor: yet the court say, "there appears no evi-"dence of any contract whatever with the plaintiff by the "defendant. If the plaintiff can produce evidence that the

(5) *Sugden's Law of Vendors* 54.—1 *P. Williams* 770, *Hawkins* vs. *Holmes, and note.—Stokes* vs. *Moore & ux.*, 13 *Mass. R.* 87. *Penniman* vs. *Hathorn & al.* —1 *Espin. Cases* 190.—*Knight* vs. *Crockford,* 3 *Espin. Cases* 180.—2 *Bos. & Puller* 233. —3 *John.* 399, *Bailey & al.* vs. *Ogden.*—12 *John.* 102, *Merritt & al.* vs. *Clason.*—9 *Vesey, jr.*, 234, *Coles* vs. *Trecothick.*—3 *Atkins* 503, *Wilford* vs. *Beazeley.*—2 *Johnson* 430, *Jackson* vs. *Titus.*

(6) 1 *Schoales & Lefroy* 22, *Clinan* vs. *Cooke.*—4 *Cranch* 224, *Grant* vs. *Naylor.*—5 *East* 10.—3 *Dallas* 415, *Clark* vs. *Russell.*—3 *Johnson* 310, *Sears* vs. *Brink & al.*—4 *Bos. & Pul.* 252, *Champion* vs. *Plumner.* —15 *East* 272, *Bateman* vs. *Phillips.*

" defendant undertook to guaranty the payment of this note " to him, the statement of facts may be discharged and the " parties go to trial. But if no other facts exist than those " contained in the statement, the plaintiff must become non- " suit." According to these decisions, which we have no doubt are correct, it should seem that an agreement thus written over a name is no evidence at all. And the reason is, that the name thus placed upon the paper does not imply any admission of the party that what is written is true. The writing, therefore, could have the same authenticity without the name. In these cases, however, there seems to have been no express authority to write any thing over the name, but there was without doubt an implied authority to place the real contract over the signature in writing.

But it is contended that *Bond* must be considered as having given an express authority to *Corbin* to write a guaranty over his name, and that this brings the case within the principles laid down in *Ullen* vs. *Kittredge.* But we are not able to see that the writing itself can have any more authenticity when made under an express authority, than when made under an implied one. There is a material distinction between authorizing an agent to sign a contract already written, or make and sign an agreement, and authorizing an agent to reduce to writing a contract already made. Where an agent has been authorized to sign a contract reduced to writing, as soon as his authority and signature are proved, the writing becomes evidence of the terms of the contract. The authority of signature may be proved by parole. 1 *Schoales & Lefr.* 22. But parole testimony will be inadmissible to contradict or explain the writing. So, where an agent has been authorized to make a contract, and has reduced it to writing and signed it, when his authority and signature are proved the writing itself becomes evidence of the contract; and although the principal may deny the authority and signature of the agent, he would not be permitted to introduce evidence to shew that the contract made

by the agent was different from the written contract. In both these cases the signature of the agent is an admission that the contents of the writing are true; and it is this circumstance that makes the writing evidence. But when an agent has been authorized to write over the signature of the principal a contract already made, it is not enough to prove the signature of the principal, and the authority of the agent to write a contract over it. This does not make the writing evidence of the contract, unless the contract is to be presumed to be any thing the agent pleased to write. It would still be necessary to shew that the agent had pursued his authority; and this could be done only by shewing what the contract was, and comparing it with the writing. And when it was proved that the writing contained the real contract, this would not make the writing itself evidence of the contract. The proof of the contract would still rest altogether upon the evidence introduced to shew that the writing was true. There is a distinction between proving a paper to be true, and proving that a party admitted it to be true. A writing may be proved to be true, and yet be itself no evidence of the truth it contains. But if a writing is proved to have been admitted to be true, it at once becomes evidence against him who made the admission. Thus a letter sent by one correspondent to another, does not become evidence by being proved to be true; but when it is proved that he to whom it was addressed admitted it to be true, the letter itself becomes evidence against him. And even if it might be presumed, when an agent is authorized to write a contract over the signature of his principal, that the contract he has written is the true one, so as to make the writing evidence, still it would not have that authenticity which the statute requires. For it would still be competent for the principal, without doubt, to rebut the presumption, by shewing that the agent had not pursued his authority, and that the contract he authorized him to reduce to writing was altogether different from the one written, so that the writing would have no tendency to prevent the mischief the statute

was intended to remedy. So that it seems to us to make no difference whether the writing be made under an express or implied authority. There is in neither case that assent to the writing itself which can give it the character of a written contract. The signature gives it no authenticity. The contract might as well be written on another paper, or, as in the case of *Ullen* vs. *Kittridge*, not written at all.

*Judgment for the defendant.*