THE WORTHINGTON BRICK COMPANY, Appellant, *v.* WILLIAM BULL and Others, Executors and Trustees Under Last Will and Testament of HENRY R. WORTH-INGTON, Deceased, and Others, Respondents, and HENRY F. WORTHINGTON, Executor and Trustee, etc., and Individually, Appellant.

*What papers, facts and surrounding circumstances, are not sufficient to establish the existence of a contract to convey land.*

A son, with pecuniary assistance from his father, was engaged in the brick business carried on upon land belonging to them both. The business proving unremunerative a certificate of incorporation of the " Worthington Brick Company," signed by the father and son and one Burt, was duly filed. The capital stock of the corporation was fixed at $50,000; its business was stated in the certificate to be carried on at the place where the business had been carried on by the son. The son and his wife conveyed their half of the land to the company, and this action was brought to compel a specific performance from the father's executors of an alleged agreement by which the father and son were to convey to the company the aforesaid land in consideration of the $50,000 of stock to be divided between them.

In support of this alleged agreement it was shown that a deed from the father and son and their wives to the plaintiff was prepared; was found after the father's death among his papers in an envelope, indorsed in his handwriting, " Worthington Brick Company," upon which deed, in the father's hand-writing, opposite to the respective seals, appeared in pencil the initials of the names of the father and son, namely, " H. R. W.," — " Mrs.," — " H. F. W.," — " Mrs.," respectively; that the company was and had been in the actual possession of the land in question, carrying on its business thereon; that the whole capital stock, except one share, was issued to the father and son, and appeared to have little, if anything, to represent it other than the land and the implements used thereon.

*Held,* that the court below properly dismissed the complaint upon the ground that the evidence, and the different facts and circumstances collectively considered, did not establish a contract either verbal or otherwise.

That some instrument, subscribed by the testator agreeing to transfer his interest in the brick-yard to the plaintiff, notwithstanding his intention to convey did in reality exist, was essential to the completion of the contract.

Appeal from a judgment entered at Special Term dismissing the complaint.

*Addison M. Burt,* for the plaintiff, appellant.

*John A. Bryan,* for the defendant, appellant.

*W. A. Jenner,* for William L. Bull and others, respondents.

BRADY, J.:

This action was brought to compel the specific performance of an agreement between the testator, Henry R. Worthington, and his son, Henry, and the plaintiff's corporation. The complaint alleged that the plaintiff was incorporated on the 1st of March, 1880, by the filing of a certificate signed by the Worthingtons just mentioned and Addison M. Burt, a lawyer; that the father and son were the owners as tenants in common of certain lands on which there was a brick-yard at South River, where for several years the son had carried on brick making and was the owner of certain personal property there located; that shortly before the formation of the company they determined that they would organize the same for the purpose of continuing the business, and that the real estate at South River should be conveyed to the corporation for the consideration of the entire amount of capital stock which was to be equally divided between them; that, on the third of March of the same year, the plaintiff agreed to purchase from the Worthingtons, upon the terms mentioned, and that Mr. Burt was requested by the parties to prepare a deed by which the real and personal property should be transferred to the plaintiffs for the consideration already mentioned; that a deed was drawn, but through some inadvertence was not executed, although it was found after his death amongst the papers of the testator in an envelope which was addressed " Worthington Brick Company;" that nothing was done by either the father or the son indicating a desire or purpose to rescind the agreement; that the father left a will which was duly admitted to probate, whereby the executors were given a power of sale; that, in pursuance of this agreement between the Worthingtons and plaintiff, the son and his wife conveyed their half of the brick property to the plaintiff, and that the latter, through its proper officers, demanded from the executors a conveyance of the other half.

This statement sufficiently developes the character of the complaint and the allegations on which the claim is founded. The answer denied all these allegations excepting the ownership in common, and excepting, also, that Mr. Burt was the lawyer of the testator at the death of the deceased, and it contained also a denial of the will as set forth in the complaint, and as a separate defense averred that if there was any agreement as to a sale it was void

under the statute of frauds; that if it ever existed it was rescinded, and further that there was an entire want of consideration. The evidence upon the trial established the facts that the son had conducted the business mentioned at South River, assisted pecuniarily by his father; that the business was not remunerative; that the company was organized as alleged in the complaint, the capital stock being stated at $50,000; that a deed was prepared, dated March 3, 1880, from Henry R. Worthington, deceased, and his wife, and H. W. Worthington, the son and his wife, to the plaintiff, of the property at South River, which had four seals, and in the. testator's handwriting in lead pencil, opposite the first seal, was written " H. R. W. ; " opposite the second seal, " Mrs. ; " opposite the third, " H. F. W. ; " opposite the fourth, " Mrs.," which deed was found in an envelope indorsed in the handwriting of the testator, " Worthington Brick Company."

In the eleventh clause of the will of the testator it was recited that, whereas he owned one-half of the brick property at South River, New Jersey, then occupied by his son Harry, who was the owner of the other half, it was his will that he should be allowed to purchase the testator's half, if he should so desire, at a fair and reasonable valuation and on easy terms of payment; and further that, whereas he had, from time to time, advanced to his son a large part of the money used in the purchase and improvement of his property at South River, and in the support and maintenance of his family, he directed that Harry should pay or secure to be paid to his executors, for the benefit of the estate, two-thirds of the value of his undivided share of the property at South River, said value to be ascertained by proper appraisement and valuation at the time of his death, or as speedily as possible thereafter, unless his son Harry should prefer to surrender and convey all the property free from incumbrances to his executors as part of his estate, in which case the son was to have and receive his equal share of the residuary estate, subject to the deduction only of the sum of $10,000, as thereinbefore provided. But in the event of his not accepting the proposition and declining to pay the two-thirds of the value of the testator's undivided half of the property, and should refuse to convey the same to his executors as provided, then it was his will and desire and he directed that the sum of $25,000 should be deducted from

the share of his estate to which his son would otherwise be entitled under the provisions of his will, in addition to the sum of $10,000 to be deducted from such share as therein provided, and his will also contained the following: " And I further state that although a far larger amount of my money has been spent in the effort to develop a business at South River than I have directed to be charged against my son Harry, or to be deducted from his portion of my estate, such expenditure was made by me, voluntarily, with a view to establish him in a business which has not thus far been remunerative. While, therefore, I look to him to pay a reasonable sum for what is left there of tangible property, I do not expect him to pay the expenses of unprofitable experiments and wasted investments made with my approval and by express sanction."

The certificate of incorporation declared that the objects for which the company was formed were the manufacture and dealing in common bricks, fire bricks, tiles, drain pipes, sewer pipes and other articles made of clay, and that the name of the town and county in which the operations of the company were to be carried on was the city and county of New York, where the principal offices of the company would be, but part of its business was to be carried on at South River in the State of New Jersey. And it was further declared that the number of the trustees of the company should be three and that the names of those who should manage its concerns for the first year were Henry R. Worthington, M. F. Worthington and Addison M. Burt. The capital stock, as already stated, being put at $50,000, divided into 2,000 shares at twenty-five dollars each.

It is not pretended that any contract for the sale of the testator's interest in the brick yard was subscribed or signed or that the deed was delivered, but it is insisted, on behalf of the plaintiff, that upon the facts stated there is abundant evidence of an agreement on the part of the father and son to transfer the property mentioned, to the company, one-half of which had already been transferred by the son. The learned justice in the court below thought the evidence did not amount to a contract either verbal or otherwise, and that one could not be formed from the different facts and circumstances collectively considered, and therefore dismissed the complaint.

The discussion of the plaintiff's right in the brief submitted on its behalf assumed a very wide range and embraces a great many

doctrines and principles, some of which may be justly invoked for the plaintiff's benefit. It will not be questioned that a contract for the sale of land binding upon the party charged may be eliminated from papers other than one directly in itself stating the terms and conditions of the contract. It is said by Browne on the Statute of Frauds, section 346, as a deduction from the numerous authorities, that a writing relating to the transaction may be sufficient, however informal; a letter, a receipt of money, a bill of parcels, or a stated account in which the vendor charges himself with the price, or the return of the sheriff upon an execution or the vote of a corporation entered on their minutes, signed by their clerk, may be a sufficient memorandum and it is said in section 346, as a result of a history of the question, that it is often the case that the terms of the contract are not all contained in any one paper and the question then arises as stated by him under what circumstances two or more papers can be offered in evidence as constituting the memorandum, one only, or all being signed, as the case may be. It is sufficient, if when taken together, a contract is made out and there may be an identification of the documents where there is an offer and acceptance by parol evidence. (*Raubitschek* v. *Blank*, 80 N. Y., 482, and cases cited.)

In this case, as we have seen, the business was conducted by the son, the father advancing money and lending his aid to its successful establishment; that the business was not remunerative; that the organization of the plaintiff as a corporation was projected by the father and son in connection with Mr. Burt; that the capital stock was $50,000, represented by 2,000 shares at twenty-five dollars each; that the father and son and Mr. Burt were the trustees; that the business was conducted in part on the lands which it was alleged were, by aggreement, to be conveyed to the corporation; that there was comparatively little to represent the capital stock of $50,000 unless the land were embraced; that a deed was prepared, found amongst the papers of the testator in an envelope marked "Worthington Brick Company," the consideration of which was said to be $50,000, and that the testator had indicated by pencil marks the places at which he and his wife, and his son and his wife, were to sign the instrument. We have, therefore, two papers, one of them the certificate of incorporation and the other

the unexecuted deed bearing upon the question of transfer, surrounded by facts and circumstances which lead to the conclusion that the conveyance of the land was contemplated and agreed upon, but not consumated during the life of the testator, for what reason does not appear. There is no pretense that the corporation did not continue in the possession of the property up to the time of the decease of the testator. There is, however, a link wanting in the chain of facts and circumstances which would seem to be essential to the completion of the contract, and that is some instrument subscribed by the testator agreeing to transfer his interest in the brick-yard to the plaintiff, notwithstanding that the intention to convey did in reality exist, if we regard the scheme of the plaintiffs' incorporation, from its commencement down to the moment when the deed went into the possession of the testator, who was one of the trustees of the company, and was by him so marked as to indicate an intention to execute it. This would seem to be particularly so for the reason that he and his son were made by the deed the recipients of the entire capital stock except, perhaps, one share to Mr. Burt, to enable him to act as trustee and also for the reason that there would be very little else to represent the capital stock, and it being the evident intention to pay in the amount of the stock as required by law by the transfer of the land itself, which, with the implements used, and the other personal property on the land, went to make up the entire amount of the capital stock. The certificate of incorporation must be regarded as a part of the arrangement by which the contract was indicated, and in which it is distinctly stated that a part of the business was to be conducted at South River, the *locus in quo* contained in the deed itself found in the possession of the trustee who was to sign it and in an envelope indorsed by him in the name of the company, thus expressing that it was a transaction of the company and undoubtedly for its benefit, and which, having been done by the testator himself, would doubtless be a sufficient signing within the adjudicated cases cited on the subject of signature, prior to the change in the statute of frauds, and which, it was very well established, might be in any part of the contract or instrument, in the body or at the foot, or elsewhere, so long as it appears to have been placed there by his sanction. (*Merritt* v. *Clason*, 12 Johns., 102; *Clason* v.

*Bailey*, 14 id.,-484; Browne on Statute of Frauds, § 416, and cases.) But the rule was changed by the substitution of the word "subscribed," and which, as determined by adjudication, means signing at the end or bottom of the contract. (*Davis* v. *Shields*, 26 Wend., 351; *Vielie* v. *Osgood*, 8 Barb., 132; *James* v. *Patten*, 6 N. Y., [2 Seld.] 9.) Giving to the plaintiff, therefore, all it can claim, there was no execution of a contract to convey, however impressive the array of facts may be of an intention to do that act. The making of initials opposite the seals, or at the places where the signatures were to be made, was not a subscription in any sense under the latter rule created by the authorities last cited, although it would seem to be conclusive evidence of an intention to sign. If there were any papers subscribed by the testator which expressed, when united or combined, a contract to sell containing the terms thereof, even though presented in shreds and patches, it might be woven out, but this essential pre-requisite does not exist. The appellant, in the consideration of the case, seems to have been influenced by the earlier rule as to signatures and the English cases on the subject, which are not in harmony with our statute. Much time has been devoted to the examination of the appeal, but it has been found impossible to demonstrate the error which is supposed to have been committed in the court below. The judgment must, therefore, be affirmed, with costs.

DANIELS, J., concurred in the result.

Judgment affirmed, with costs.