In the Matter of Proving the Last Will and Testament of JAMES CONWAY, Deceased.

In determining whether a will was executed in conformity to the statute (2 R. S. 63, § 40) courts will *not consider the intention of the testator, but that of the legislature.*

In drawing an instrument presented for probate as a will, a blank form was used, the whole of which was upon one side of the paper. A blank was left for the dispositions to be made, preceded by the words "I give, devise and bequeath my property as follows." This blank was filled up by three complete devises; at the end of the last was underlined, in parenthesis, the words "carried to back of will." Upon the back of the sheet was written the word "continued;" following it were various bequests, and then the words "signature on face of the will." The signature of the testator appeared at the end of the testimonium clause on the face of the paper, and those of the witnesses under the attestation clause. *Held* (BRADLEY, HAIGHT and BROWN, JJ., dissenting), that there was not such a subscription and signing by the testatator and witnesses "at the end of the will" as is required by the statute; and, therefore, that the instrument was improperly admitted to probate.

*Van Cortlandt* v. *Kip* (1 Hill, 590); *Brown* v. *Clark* (77 N. Y. 369); *In re Washington Park* (52 id. 131); *Tonnele* v. *Hall* (4 id. 140); *Crossman* v. *Crossman* (95 id. 145), distinguished.

*In re Conway* (58 Hun, 16), reversed.

(Argued February 4, 1891; decided March 17, 1891.)

APPEAL from judgment of the General Term of the Supreme Court in the fifth judicial department, entered upon an order

·made October 23, 1890, which affirmed a decree of the surrogate of Wyoming county, admitting to probate the will of James Conway, deceased.

The will was written upon a printed form consisting of a half sheet about the size of a half sheet of legal cap. The form from the beginning of the will to the end of the attestation clause was wholly upon one side of the half sheet. On the back of the sheet was an indorsement " Will" with a blank between ruled lines for the name of the testator, so placed, that when the paper was folded as an ordinary legal paper the indorsement would appear on the outside. The usual direction for the payment of debts was printed and then followed the printed words, "I give, devise and bequeath my property as follows." Following these words was a blank space five inches long. Then a printed provision appointing an executor with a blank for the name. Then the testimonium clause, a blank space for the name of the testator and the seal; then the attestation clause and a blank space for the names of the witnesses. In drawing the will the blank space of five inches in the body of the instrument was entirely filled up with devises of three separate pieces of real estate to the testator's three sons. At the end of the third devise in parenthesis and underlined were the words "carried to back of will." Upon the back of the will just below the space left for the indorsement in parenthesis and underlined was the word "continued." Then followed bequests of personal property to the testator's sons and daughters, which filled up the whole of the back of the instrument from the space for indorsement to within one inch of the bottom, and below it all appeared the words "signature on face of the will."

The signature of the testator appeared at the end of the printed testimonium clause, and that of the witnessess below the attestation clause on the face of the paper.

Further facts appear in the opinion.

*E. M. Bartlett* for appellant.

*George W. Bottsford* for respondent.

PARKER, J.   We think the probate of the instrument should have been denied, on the ground that there was not such a subscription and signing by the testator and witnesses at the "end of the will" as is required by our statute.    (2 R. S. 63, § 40.)   The aim of the statute is to prevent fraud.   To surround testamentary dispositions with such safeguards as will protect them from alteration.   The provision " is a wholesome one and was adopted to remedy real or threatened evils.   It should not be frittered away by exceptions.   While its provisions should not be carried beyond the policy of the framers of it, that policy should not be defeated by judicial construction."   (*Sisters of Charity* v. *Kelly,* 67 N. Y. 409.)   If we were without authority to guide our action, could there be room to doubt that the subscription on this instrument is in contravention of the letter and spirit of the statute?   The instrument commences as follows : "The last will and testament of James Conway," and on the same page towards the bottom it concludes, "In witness whereof I have hereunto subscribed my name   *   *   *," and immediately following is the subscription "James Conway."   If between such beginning and end all of the provisions of the will were written, there would be a full compliance with the statute.   But such is not the case.   On the other side of the sheet and occupying nearly the entire page are what purport to be important testamentary provisions.   Now, can it be said that this will is subscribed at the end?   That somewhere between the beginning and the signature of James Conway the matter written on the second page appears?   These questions are emphatically answered in the negative by the decisions of this court in *Matter of O'Neil's Will* (91 N. Y. 516).   In that case as in this the will was written on a printed form or blank.   The written part was divided into thirteen paragraphs.   The thirteenth being as follows :   "And I authorize and empower my executors, hereinafter named, to sell, convey, assign and transfer my real property for the payment of the bequests hereinafter named and mentioned either at private " (here the writer came to the testimonium clause at the end of the blank

space and thereupon turned over the sheet and completed the sentence on the top of the next page, as follows:) "at public sale, and in the manner that they will deem the most profitable and advantageous to my said estate, but in no case shall my said executors by process, by law or otherwise, sell and convey and dispose of my said real property before the lapse of five years after my death, unless my said executors shall see fit and proper to sell and dispose of the same by virtue of the authority hereinbefore given them as aforesaid." It was read to the testator in the presence of witnesses, the portion written on the top of the fourth page being read as if it had all been written in the blank space immediately after the word "private." He then signed the will just after the testimonium clause, declared it to be his last will and testament, and the witnesses at his request and in his presence subscribed their names as witnesses immediately underneath the attestation clause. This court in a carefully considered opinion delivered by Chief Judge RUGER, reached the conclusion that the testator and witnesses did not sign "at the end of the will" as commanded by the statute, and, therefore, the instrument was invalid and not entitled to probate. That decision both in its letter and spirit seems to be decisive of the question before us, but as it is insisted otherwise, reference will be made to the features wherein it is suggested that they are so far distinguishable as to permit a different result.

In this will the third written paragraph and the last on the first page ended about the middle of the last line before the testimonium clause, then enclosed in brackets was written the following: "Carried to back of will." On top of the second page and about half an inch above the commencement of the fourth subdivision enclosed in a bracket and underscored is the word "continued," and below the writing and near the bottom of the page are the words "signature on face of the will." While in O'Neill's will there are no such words, but the concluding paragraph is written on one side so far as the blank space would permit, and then concluded on the other. In each case it is conceded that it was the intent of the

testator that the provisions appearing on the page following his signature should form a part of his will, and to each case is the remark of Chief Judge RUGER equally applicable that "while the primary rule governing the interpretation of wills, when admitted to probate, recognizes and endeavors to carry out the intention of the testator, that rule cannot be invoked in the construction of the statute regulating their execution. In the latter case courts do not consider the intention of the testator, but that of the legislature." (*Matter of O'Neil, supra.*) It is likewise true that in this will, as well as O'Neil's, the actual physical termination of the will is not at the place where the testator subscribed his name. And there seems to be no reason in the direction of giving support to the integrity of the statute as interpreted in *Matter of O'Neil (supra); Matter of Hewitt* (91 N. Y. 261), and *Sisters of Charity* v. *Kelly* (67 id. 409), that will permit the court to make such use of the words "carried to back of will," "continued" and "signature on face of will," as will permit a holding that the signing was "at the end of the will." There is no less opportunity for fraud in cases like this than in the *O'Neil* case. For how can a case be conceived of where alteration can be more easily accomplished? A paragraph is ended and a portion of a line left, there then need but be written therein "carried to back of will," and then any number of disposing paragraphs may be written thereon. The words of themselves do not prove that they were written before the signing of the testator. Certainly, they furnish no more satisfactory evidence of having been written before the happening of such event than where the entire space before the testimonium clause is occupied by a subdivision of the will, which is simply completed on the next page as in the *O'Neil* case. And when, as frequently happens, one or both of the witnesses die before a will is probated, a contrary construction would seem to open a door for fraud which it was the aim of the legislature to close.

Again, if the rule of construction laid down in the *O'Neil* case be departed from to this extent, where can the line be.

drawn? If, by preceding the testimonium clause with the words "carried back of will," all that is written thereon may be made a part of the will, what is to prevent making another sheet a part of it also by writing on the bottom of that page continued on sheet one, and so on until any number of sheets of paper with testamentary provisions thereon be made a part of the instrument which is signed on the first page?

We have thus given some of the reasons which have led us to the conclusions:

First. That the *O'Neil* case requires this court to hold that this will was not signed at the end.

Second. That the attempted distinction may not be justified on the ground that it cannot be made to so operate as to permit frauds which it was the design of the legislature to prevent.

There now remains for consideration the basis upon which it is sought to found the distinction.

Reference is made to the rule stated in Williams on Executors, at page 97, "if a testator in a will or codicil, or other testamentary paper duly executed, refers to an existing unattested will or other paper, the instrument so referred to becomes a part of the will," and other authorities tending to the same direction being cited, it is asserted that within the principle thus established "a testator may write substantial portions of his will upon the margin of the document, or upon the back of the paper, or upon the paper annexed to the will, if such provisions are referred to in the body of the instrument and connected therewith by means of asterisks, words or symbols indicating their relation to the provisions on the face of the paper."

A brief reference to the state of the law relating to the execution of wills in England will make it apparent that neither the decisions of its courts nor the rules deduced therefrom by English text writers can be made applicable to cases arising under our statute.

Prior to January 1, 1838, no solemnities were necessary for the making of a will of personal estate. Wills were admitted to probate which did not contain either the signature or seal

of the testator, and were in the handwriting of some other person. While the Statute of Frauds provided the formalities of signature and attestation necessary for a devise of lands, by statute (1 Vict. chap. 26, § 9) it was provided "That no will shall be valid unless it shall be in writing and executed in manner hereinafter mentioned; (that is to say) it shall be signed at the foot or end thereof by the testator, or by some other person in his presence and by his direction, and such signature shall be made or acknowledged by the testator in the presence of two or more witnesses present at the same time, and such witnesses shall attest and shall subscribe the will in the presence of the testator, but no form of attestation shall be necessary." This act took effect January 1, 1838. A new ground of contest in the courts was now presented as to what should be considered a signing of the will at the end or foot thereof. Mr. Williams, in his work on Executors (p. 78), says the tendency was at first in the direction of a liberal construction of this part of the statute, but afterwards it was deemed necessary to take a more rigid view of the enactment on the ground that it was intended to prevent any addition being made to the will after the deceased had executed it. Accordingly probate was refused in a great number of cases. This result, not at all surprising, in view of the fact that prior to 1838 testamentary dispositions of personalty were frequently given effect where the testator had not even signed or authorized the signing of the writing, led to the passage of the statute (15 Vict. chap. 24) entitled "An act for the amendment of the laws with respect to wills," passed June 17, 1852. Section 1 provides as follows: "Where, by an act passed in the first year of the reign of Her Majesty Queen Victoria, entitled an act for the amendment of the laws with respect to wills, it is enacted that no will shall be valid unless it shall be signed at the foot or end thereof by the testator, or by some other person in his presence and by his direction. Every will shall, so far only as regards the position of the signature of the testator or of the person signing for him, as aforesaid, be deemed to be valid within the said enactment as explained by this act

if the signature shall be so placed at, or after, or following, or under, or beside, or opposite to the end of the will, that it shall be apparent on the face of the will that the testator intended to give effect by such, his signature to the writing signed as his will, and that no such will shall be affected by the circumstance that the signature shall not follow or be immediately after the foot or end of the will, or by the circumstance that a blank space shall intervene between the concluding word of the will and the signature, or by the circumstance that the signature placed among the words of the testimonium clause or clause of attestation shall follow or be after or under the clause of attestation, either with or without the blank space intervening, or shall follow or be after, or under, or beside the names, or one of the names, of the subscribing witnesses, or by the circumstance that the signature shall be on a side or page or other portion of the paper or papers containing the will whereon no clause or paragraph or disposing part of the will shall be written above the signature, or by the circumstance that there shall appear to be sufficient space on or at the bottom of the preceding side or page or other portion of the same paper on which the will is written to contain the signature; and the enumeration of the above circumstances shall not restrict the generality of the above enactment, but no signature under the said act or this act shall be operative to give effect to any disposition or direction which is underneath or which follows it, nor shall it give effect to any disposition or direction inserted after the signature shall be made."

Clearly it needs no other argument than is furnished by a statement of the practice in England respecting the probate of wills prior to 1838, and a reading of the amendment of 1852, to demonstrate the inapplicability of English decisions to a question like that before us. By statute the English courts are commanded to consider the intent of the testator in determining whether there was a due execution. With us it is the intention of the legislature and not that of the testator which controls such a question. (*Matter of O'Neil.*)

Opinion of the Court, per Parker, J.

Williams on Executors, Jarman on Wills and the English decisions cited need not, therefore, receive other consideration.

*Van Cortlandt* v. *Kip* (1 Hill, 590) decides simply that a codicil duly executed will amount to a republication of the will, causing it to speak as of the date of the codicil, and that when such is the case both should be read and construed together as one instrument. That proposition does not admit of controversy. (*Caulfield* v. *Sullivan*, 85 N. Y. 153–160.) But it is difficult to see how it can be made available in the disposition of the question now presented.

In *Brown* v. *Clark* (77 N. Y. 369), a woman executed her will, subsequently married, and then in due form executed a codicil which, after describing the will executed before marriage, continued as follows: " I do hereby republish, reaffirm and adopt the aforesaid instrument as my present will in like manner as if so executed by me, but modified pursuant to this codicil, which, in connection with and amendment of my said will, I now publish and declare together as constituting my last will and testament." And at the execution thereof the testatrix declared the instrument to be " a codicil to her last will and testament, and a reaffirmation of the latter." As her marriage operated to revoke the will (2 R. S. 64, § 44), the question presented was whether the execution of the codicil was a republication of the will. And such was held to be its legal effect. No other question was involved or decided, although reference was made to certain English decisions, which are not deemed in point for reasons already given.

*Matter of the Commissioners of Washington Park, Albany* (52 N. Y. 131), was a proceeding instituted to acquire title to lands under a statute requiring that in the petition the real estate sought to be taken must be fully described, and the names and places of residence of the parties owning or claiming an interest in the real estate stated. In the body of the petition the real estate was referred to as " hereinafter fully described and set forth," and the petition further declared that " hereafter is stated the names and places of residence of

the parties  *  *  *." Annexed to the petition were sched-
ules containing the recitals called for by the statute. It was
held that the schedules formed part of the petition, and that
there was a sufficient compliance with the statute. That case
does not seem to be applicable here. The statute is not the
same, nor the object sought to be accomplished. It did not
require that the paper should be subscribed at the end. And
the reasons which induced the legislature to require that in
case of wills the provisions thereof should all be written before
the signature did not exist.

   *Tonnele* v. *Hall* (4 N. Y. 140) was considered by this court
in the *O'Niel* case, and need not be again referred to. The
reference thus made to the authorities cited in support of the
proposition enunciated in Williams on Executors may well be
concluded by a quotation from the opinion in the *O'Neil* case :
"It is not believed that any paper or document containing
testamentary provisions not authenticated according to the
provisions of our Statute of Wills has yet been held to be a
part of a valid testamentary disposition of property, simply
because it was referred to in the body of the will."

   It is sought to further distinguish this case from O'Neil's
on the authority of certain cases in which the effect of an
interlineation or erasure are considered. *Crossman* v. *Cross-
man* (95 N. Y. 145), is the only case cited in which the ques-
tion arose under our statute. In that case a will was executed
in duplicate, in one there was an interlineation of the name of
one of the executors, and it was noted at the bottom of the
will before the attestation clause. The interlineation was
necessary to make the two wills perfectly alike. And Judge
EARL, in delivering the opinion of the court, said : "Where
an interlineation, fair upon the face of an instrument, is
entirely unexplained, we do not understand that there is any
presumption that it was fraudulently made after the execution
of the instrument. But here the interlineation was noted at
the bottom of the instrument before the attestation clause,
and so too, the interlineation was necessary to make it a dupli-
cate.  *  *  * Taking all these circumstances, there was

sufficient to cast the burden upon the contestants to show that the interlineation was fraudulent and unauthorized."

Now, can it be said that the provisions on the back of this instrument constitute an interlineation? They do not appear on its face, and do not have any necessary connection with that which precedes or follows them. Clearly such a determination is not supported by the *Crossman* case. And that decision should not be carried beyond its terms in order to obtain a basis for distinguishing this case from that of O'Neil's.

The judgment should be reversed and petition for probate dismissed, with costs.

BROWN, J. (dissenting). The appellant claims that the judgment should be reversed upon the authority of *Hewitt's Case* (91 N. Y. 261), and *O'Neil's Case* (Id. 516). In *Hewitt's* case the witnesses signed in the middle of the will, and the facts have no similarity to the present case.

In *O'Neil's* case the will was written on a printed form consisting of one sheet of four pages. The blank left for the insertion of special and substantial parts of the will was nearly three pages, and the formal termination and attestation clause was at the end of the third page. This was all filled up, and being of insufficient size to contain all the provisions the testator desired to make, the remaining portion was carried to the fourth page.

The names of the testator and witnesses appeared at the foot of the third page. These facts are similar to those in the case before us, but in one very essential particular the cases differ.

In *O'Neil's* case there was no reference in the body of the will to the writing on the fourth page, and that part of the will was in no way authenticated, and this circumstance was referred to by Judge RUGER in his opinion.

In this case there is a clear and distinct reference in the body of the will to the provision on the back of the paper, and they are connected by means of the words in parenthesis and their relation to each other indicated.

It is, well settled that an interlineation or erasure on the face of a will does not necessarily destroy it, and there is no presumption where it is fair upon its face that it was made after execution.. (*Crossman* v. *Crossman*, 95 N. Y. 145; *Speake* v. *United States*, 9 Cranch, 37; *Bailey* v. *Taylor*, 11 Conn. 531; Jarman on Wills, vol. 1, p. 144.)

So it is also established by numerous authorities that any written testamentary document in existence at the execution of a will, may by reference be incorporated into and become a part of a will provided the reference in the will is distinct and clearly identifies or renders capable of identification by the aid of extrinsic proof the document of which reference is made. (*Van Cortlandt* v. *Kip*, 1 Hill, 590; *Brown* v. *Clark*, 77 N. Y. 369; *Matter of Comrs. of Washington Park*, 52 id. 131–134; *Tonnele* v. *Hall*, 4 N. Y. 145; *Burton* v. *Newbery*, L. R. [1 Ch. Div.] 239; Williams on Executors, 97; 1 Jarman on Wills, 78.)

I think this will may be sustained within the principle of the authorities cited.

It would be quite too narrow a construction of the statute to hold that in no case is a will valid when a substantial provision was written below the signature when such provision is connected with the body of the instrument by a clear and distinct reference made to it.

By such reference it is incorporated into and becomes a part of the will, and no distinction is apparent between such a case and one where the testator writes upon the margin of the instrument or between the lines, and connects such writing with the body of the paper by an asterisk or hyphen.

In this case there are no suspicious circumstances appearing on the face of the will. It is all in one handwriting, and it is proved beyond question that the will was read to the testator and was executed in the condition it now appears, and the testator understood perfectly that part of the will was on the back of the paper. The words "carried to back of will" on the face of the paper, and the word "continued" on the back connect the two parts and indicate their relation to each other,

and in determining where the end of the will is, the writing on the back is to be read as if written on the face of the will.

No one could read this will in the ordinary way and reach the end without reading that part on the back of the paper. When the words "carried to back of will" are reached, one naturally turns to the back of the paper, and the word "continued" connects the parts. When that part on the back is read, the reader returns to the face of the paper and resumes the reading at the beginning of the clause appointing the executor.

The case would be the same if, instead of adopting the course pursued, the draughtsman had written on the margin of the face of the paper what appears upon the back and connected it with the body of the instrument with an asterisk.

The case does not fall within the mischief that the statute was designed to guard against, and there is no authority holding such a will as this invalid.

In *Sisters of Charity* v. *Kelly* (67 N. Y. 409), the signature of the testator appeared in the middle of the clause appointing the executors. In that case Judge FOLGER said: "The instrument is to be scanned to learn where is the end of it as a completed whole, and at the end there found must the name of the testator appear."

Scanning this will to ascertain where the end is, we cannot ignore the words and symbols which connect the body of the instrument with the writing on the back, and reading it in the light and meaning of those words and symbols, the signature appears at the end.

The judgment should be affirmed.

All concur with PARKER, J., except BRADLEY, HAIGHT and BROWN, JJ., dissenting.

Judgment reversed.