it freely and without undue control, especially if the circumstances are suspicious."

I do not deem any further discussion necessary to show that the explanation which the courts have uniformly held to be necessary in this class of cases is wanting here.

Each of the authorities cited in the oral opinion of the learned surrogate is readily distinguishable from the case at bar. In Cudney v. Cudney, 68 N. Y. 148, the party charged with having exercised undue influence was a son of the testator. In Re Mondorf's Will, 110 N. Y. 150, 18 N. E. 256, it was held that the simple fact that all of a testator's estate was given to a stranger in blood did not warrant the inference that the gift had been obtained by undue influence. It is to be noted that in the case cited the will was read twice to the decedent; that he left all his property to a lady with whom he had boarded for several years, having become estranged from his wife; and that the court said there was not the least evidence that this lady ever attempted to influence him in the disposition of his estate.

In my opinion, the decree, so far as appealed from, should be reversed, and an order should be made directing the trial by a jury of the material questions of fact arising upon the issues between the parties to the proceeding.

Decree of the surrogate's court, so far as appealed from, reversed, and issues of fact directed to be tried by a jury; costs to abide the final award of costs. All concur.

---

(43 App. Div. 394.)

### In re ANDREWS' WILL.

(Supreme Court, Appellate Division, Second Department. October 3, 1899.)

WILLS—EXECUTION.

A will offered for probate was drawn on a printed blank folded in the middle so as to constitute four pages; the connection between them being at the side, and not at the bottom. Clauses in writing, following a printed introduction, occupied all of the first page. On the next page, or the reverse side of the first, were printed forms for appointment of executors, testimonium and attestation clauses, and blanks for signatures, all properly filled in in writing. At the top of what would ordinarily be termed the third page were the words "2nd page," followed by additional clauses in writing to the end of the page. At the top of the page on which the subscription of the testator and witnesses occurred were the words "3rd page." *Held*, that the will was not subscribed at its end as required by the statute, and was therefore not entitled to probate.

Goodrich, P. J., and Woodward, J., dissenting.

Appeal from surrogate's court, Kings county.

Application for the probate of the will of Isabella Andrews, deceased. From a decree of the surrogate rejecting the will, proponents appeal. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

George G. Reynolds and Armour C. Anderson, special guardian, for appellants.

Frederic W. Adee, for respondents.

CULLEN, J. The due execution and publication of the will, save in one respect, were proved beyond question. The will is written on a blank or printed form, consisting of a single sheet of paper, folded in the middle so as to constitute four pages. At the top of the first page is found in print the caption or introduction to a will, as follows:

"In the Name of God, Amen.

"I, ——, being of sound and disposing mind and memory, and considering the uncertainty of this life, do make, publish, and declare this to be my last will and testament, as follows."

On the next page, or, rather, on the reverse side of the page already referred to,—for whether it is or is not the next page is the very question involved in this controversy,—there is printed a form of appointment of executors, with the names blank. Below this is the testimonium clause, also in print, with the date blank. After an intervening space for the signature of the testator, there occurs a printed attestation clause for signature by the witnesses. In so far as there are blanks in the printed form, these are properly and appropriately filled in in writing. After the printed introduction to the will already referred to, there follow on the first page, in writing, various dispository provisions, which occupy substantially the whole of the page, but a narrow margin being left at the end. On what would ordinarily be termed the third page of the instrument, or the page to the right of that on which are found the signature of the testator and those of the subscribing witnesses, the dispository provisions are continued, wholly in writing, unto the end of that page. Above these provisions, also in writing, are found the words "2nd page." At the top of the page on which occurs the subscription by the testator and witnesses are found in writing the words "3rd page." In other words, this will is written in the form frequently used at the present time in the case of ordinary correspondence, where a single sheet of note or letter paper, consisting of two leaves or four pages, is employed; that is to say, the writing is continued from the foot of the first page to the third page, and from the foot of the third page to the second page. The question is whether a will so written, and subscribed on the second page, is a compliance with the provisions of our statute which requires a will to be signed at its end. The learned surrogate held that it was not, and rejected the instrument, solely because the will is written in the order of paging referred to. Entirely against our first impressions, and solely under the stress of authority, we are of opinion that the decision of the learned surrogate is correct.

If we were unaided by the light of judicial decisions, we should be of opinion that the end of a will, under the statute, was the point or position where the testator, or the draftsman on his behalf, last wrote any provisions of the will, in the order of writing which the testator or his draftsman saw fit to adopt, to be determined by the context of the instrument itself. We should also be inclined to the belief that it was impracticable, if not impossible, to adopt any other rule without in different cases being led to inconsistent and incongruous results. Within the rule thus stated, this will would be

clearly good, as it was established by the evidence that the will was written in its entirety and subscribed by the testator in the same form in which it was found when offered for probate. Nor would the earlier authorities in this state condemn it as improperly signed. Substantially all that was held in Sisters of Charity v. Kelly, 67 N. Y. 409, is that the end of a will is not found until the last word of all its provisions has been reached. It did not prescribe any order or form in which the instrument must be written, with reference to its position on the paper or substance upon which it was written. But subsequent cases have gone much further, and have declared that the end of a will, under the statute, depends not only on the context of the instrument, but upon its physical position upon the paper or substance upon which it is written. In Re O'Neil, 91 N. Y. 516, the will was drawn on a printed form, which had the formal conclusion and attestation clause printed at the foot of the third page. The first three pages being insufficient to contain the written directions of the testator, these were continued on the fourth page, the testator and witnesses signing at the foot of the third page. It was held that the will was not signed at the end. In that case Judge Ruger dwells on the fact that there was no mark or asterisk on the third page to connect the writing on the fourth page with it. It would be possible to distinguish the present case from the one cited, in the fact that here the pages are numbered "2nd" and "3rd." The next case was In re Conway, 124 N. Y. 455, 26 N. E. 1028. There also the will was drawn on a printed form, all of which was found on the face or one side of a half sheet of paper; the introduction being at the head of the page, and the testimonium and attestation clauses at the foot. The space intervening between the caption and the conclusion of the will was filled in in writing, the concluding words of which were, "Carried to back of will." On the other side of the sheet there was written, "Continued." Then followed further testamentary directions, at the conclusion of which was written, "Signature on face of the will." It was held that the will was not signed at the end, and the instrument was rejected. This decision was made by a divided court, in the Second division of the court of appeals. Subsequently a similar question arose in Re Whitney, 153 N. Y. 259, 47 N. E. 272, and the decision in the Conway Case was unanimously approved. This, also, was the case of a printed blank covering one page, and again the space between the formal introduction and formal conclusion of the will was inadequate for the purpose of expressing the testamentary dispositions. At the end of the written part, and before the conclusion of the will, there appeared the words, "See annexed sheet." On another piece of paper, fastened to the will, were written two other clauses. It was held that the will was not signed at the end. In re Blair, 84 Hun, 581, 32 N. Y. Supp. 845, affirmed on opinion below, 152 N. Y. 645, 46 N. E. 1145, enunciates practically the same rule. We do not see how it is possible to distinguish the present case in principle from the authorities cited. True, it has been asserted by lecturers and text writers that the statutory requirement that a will must be signed at its end was not enacted to guard against the incorporation

into wills of spurious testamentary dispositions, but to prevent, especially in the case of holographic wills, inchoate instruments or drafts, in which the testator had written his name in one place or another, being given effect to as if executed testaments. Mr. Hardon, of Columbia College, in a recent article on this subject, contends that the requirement of the Revised Statutes that a will shall be signed at its end was enacted because of the Leake Case (Watts v. Public Adm'r) 4 Wend. 168. It is not, however, always safe to attribute legislative action solely to a single event that happened at the time. The court of appeals, in the decisions referred to, through Judges Ruger, Parker, and Bartlett, has asserted that the object of the statute is to guard against the incorporation of spurious provisions into wills. These decisions proceed on this ground, and, in determining the application of the statutory requirement to a particular case, we must regard that as the object of the statute which has been declared by the court of appeals to be such. If one construction of the statute will accomplish that object, and another not, we must adopt the former. Governed by these considerations, it seems to us impossible to uphold the will before us. The only things appearing on the face of the instrument to connect the so-called second page (ordinarily termed the third page) with the rest of the will are the writings at the head of the two pages, "2nd page" and "3rd page." These do not establish the connection or order of writing as conclusively as appeared in the O'Neil Case or the Conway Case. In the earlier case the writing on the third page terminated in a broken sentence, showing clearly that something was to follow. Here the first page is complete, and, were the second leaf torn off or separated from the first, the first leaf would present the appearance of a completed instrument, with nothing to indicate that any part of it was absent. In the Conway Case, on the face of the will was written, "Carried to back of will." The writing on the reverse page commenced, "Continued," and concluded, "Signature on face of the will." If it were possible by any written statement to have incorporated into the will the provisions written on the back, and if it were possible by such writing to prevent the danger from spurious provisions being subsequently placed in the will, it would seem that these statements would have been efficacious for the purpose. But Judge Parker points out that they were insufficient, that the words "Carried to back of will" might have been interpolated after the will was written, and that they afford no safeguard against fraud. Surely the words "2nd page" and "3rd page" afford much less security against fraud than the writing in the Conway Case. In the present case it is difficult to see why the whole fourth page might not, subsequent to the execution of the will, be covered with testamentary dispositions, and the page headed "3½" or "3 star."

It is argued that we are, in effect, holding that as a matter of law the reverse side of the leaf first written upon constitutes the second or next page, while it is a matter of common practice in writing letters to proceed from the foot of the first page or front of the first leaf to the same side of a new leaf, and from that to the reverse side of the leaf first written upon, and that we are prescribing the order in

which the writing of a will shall proceed, where the statute has made no such requirement.    We appreciate the force of this criticism; nor do we wholly deny that it is apposite, though the rule we declare does not go to the extent imagined.    We do not hold that from the first page a will must be continued on the second page alone, or that the top of the second page must be in a position corresponding to that of the first page.    It would, no doubt, be proper to treat the second and third pages as a single page, carrying the written lines across both pages.    But, as we understand the effect of the decisions cited, the rule to be gathered from those cases is that, whenever a will is written on a single piece of paper, the writing must be in such an order as will prevent an interpolation of spurious provisions between the beginning of the will and the signatures of the testator and subscribing witnesses.    If the testatrix in this case was at liberty to adopt the third page as her second, we know of no reason or rule which should have prevented the testator in the O'Neil or Conway Cases from going to another page before he had concluded the page on which he was writing, and then returning to the original page.

It is said that if the second leaf be severed from the first, and attached to the foot of the first page, then the will will appear well executed, under any of the authorities.    We concede this claim, but the answer to it is that, in the instrument as offered, the connection between the two leaves is at the side, and not at the foot.    It is further said that, granting the sufficiency of our answer to the appellants' argument in this respect, it is unreasonable to make the validity of a will depend on the point of connection between the several pages of the instrument.    If this is so, it is but a criticism on the rule that the signature must be found at "the physical end of the will," but that rule is the law of this state.    Many instances have been suggested to us on the argument by counsel where it would seem impracticable, if not impossible, to apply the rule.    It is said that no law requires a will to be written on a single sheet of paper; that it may be written on many detached or separate pieces; that no statute provides how such pieces shall be attached, or how separate sheets shall be authenticated.    We are asked if, in such a case, after the execution of a will, the sheets or pieces of paper should be folded together in the wrong order, and the sheet last in fact, and bearing the signatures of the testator and witnesses, is by mistake found out of place, whether the will is to be rejected.    It is not necessary for us to be able to answer this inquiry.    Many cases have occurred to us in which it would seem difficult to apply the "physical end of the will" rule.    We have frankly said that these difficulties seem to us so great that, apart from authority, we should not have been inclined to adopt such a rule; but the rule is the law of this state, and we must apply it to cases that fairly fall within its limits, though there may be imagined others to which it could not apply.

Finally, the appellants claim that the so designated "2nd page" may be upheld under the rule "that any written testamentary document in existence at the execution of the will may by reference be incorporated into and become a part of a will, provided the reference in the will is distinct, and clearly identifies, or renders capable of

identification by the aid of extrinsic proof, the document to which reference is made." Dissenting opinion of Brown, J., in Re Conway, supra. The rule asserted by Judge Brown is unquestionably the law in England, and is the law in most if not all the states, other than this, where the common law prevails. It is so broad in its scope that a legally executed codicil referring to a previous will, which has been defectively executed or attested, will by incorporation render the earlier will a valid testamentary disposition. Lord Hertford's Will, 4 Moore, P. C. 339; Allen v. Maddock, 11 Moore, P. C. 427. The doctrine that the publication of a codicil is a publication of the will to which it is a codicil is but a corollary to the rule that testamentary dispositions in existing documents may be incorporated into the will. There is authority, too, in this state, for the rule. Caulfield v. Sullivan, 85 N. Y. 153, would seem to have decided that proof of a codicil referring to a will was sufficient proof of the will itself. This, in principle, is exactly the doctrine of incorporation of extraneous documents; for, if the publication of the original will was not proved, it was for the purposes of that case the same as if it had not been executed as a will at all. But the recent cases in this state to which we have referred have greatly limited, if not entirely abrogated, the rule for which Judge Brown contended in the Conway Case. In fact, the rule seems entirely inconsistent with the other rule, that subscription must be made at the physical end of the will. If the references on the face of the wills were not sufficient in the Conway and Whitney Cases to incorporate into those instruments the testamentary dispositions, written on the back of the will in one case, and on papers physically attached to the will in the other, it seems to us idle to argue that this so-called "2nd" page of the will before us can be incorporated into that instrument. We think that, under the law now prevailing in this state, extraneous documents can be referred to only to ascertain matters of description, and not for dispository provisions (In re O'Neil, supra), and that a codicil can validate an earlier will only where the will itself was properly executed in accordance with law, and for some other reason was or became inoperative or invalid. Brown v. Clark, 77 N. Y. 369. See comments on the case in the opinion of Parker, J., in Re Conway.

With every disposition to uphold this will, we do not see how it can be done by this court. If limitations or qualifications are to be made on the cases on which this opinion is based, those limitations must proceed from the court of appeals. If the decision now made by us should be upheld by that court, it will follow that at least six wills, including one in the Fourth department (42 App. Div. 593, 59 N. Y. Supp. 756), undoubtedly containing the true testamentary dispositions of testators, and executed by those testators with the intent to conform with the statutes of this state, will have been held void because of the interpretation placed on the statutory requirements for safeguards against fraud. The rule which our decision enforces in this case operates only to prevent fraudulent additions to testamentary instruments, and not as a security against wills forged in their entirety. We think the decisions of the courts of this state will be examined in vain in the attempt to find six cases

of alleged fraudulent additions to wills, or even half that number, and it must be conceded that as to this supposed danger the remedy has proved in practice far worse than the disease. In England a statute similar to our own, and construed as strictly by the courts of that country as our statute has been construed by our courts, was passed in 1837. 1 Vict. c. 26. The evils resulting from it proved so great that in 1852 (15 & 16 Vict. c. 24) it was modified. 1 Jarm. Wills, 106.

The judgment appealed from should be affirmed, with costs to all parties to be paid out of the estate. All concur, except GOODRICH, P. J., and WOODWARD, J., who dissent.

HATCH, J. (concurring). If the question presented in this case were an original one, I should have no hesitancy in giving ready concurrence to the reasoning of Mr. Justice WOODWARD, and to the conclusion to which such reasoning logically leads. I should regard the decisions in Sisters of Charity v. Kelly, 67 N. Y. 409, and in Re O'Neil, 91 N. Y. 516, as furnishing sound authority in support of such a result. But the subsequent decisions, found in Re Conway, 124 N. Y. 455, 26 N. E. 1028, and in Re Whitney, 153 N. Y. 259, 47 N. E. 272, as they are interpreted by Mr. Justice CULLEN in his opinion, from which interpretation I see no logical escape, preclude such result; and in obedience to such authority, as the question involved was fully considered and deliberately decided, I am required to yield the convictions which I hold. If it is a difference of opinion, we should bow in deference to superior authority. If we are mistaken in our interpretation, the court of appeals can set us right. If the rule has been extended beyond the point where the will of a testator is to be sacrificed in order that a technicality, not, as it seems to me, necessary for properly safeguarding the testament, may be observed, the court above will doubtless appreciate and correct it. At the present moment the law as it stands, as I understand it, requires a concurrence in the opinion of Mr. Justice CULLEN.

GOODRICH, P. J. (dissenting). I am constrained to dissent from the opinion of Mr. Justice CULLEN in this case, in the hope that possibly the attention of the court of appeals may thereby be attracted to a renewed consideration of the principles announced by it in the cases cited by him. While I recognize the propriety, indeed, the judicial necessity, involved in the principle of stare decisis, cases sometimes arise where a judge may entertain such positive views as to justify him in declining to follow a decision of even a court of last resort, where the court announcing it has overruled its own previous decision, as was done when the court of appeals in the present instance apparently overruled the case of Tonnele v. Hall, 4 N. Y. 140. My view of the duty of a judge is well expressed by eminent authority. Said Lord Justice Brett, dissenting in a similar case (In re Goods of Gunstan, 7 Prob. Div. 102):

"That is a point of law, and on this point we must give our judgment. It is a point which must be decided upon the statute itself, and, even if twenty cases decided that it would be a sufficient acknowledgment, if we were clearly

of opinion that according to the true construction of the statute it would not do, we should not be bound by those cases. Where there have been several decisions or a series of decisions upon any statute, I should dread to overrule those decisions or that series of decisions, but still we should be compelled so to do if we thought that those decisions were not in accordance with the statute. But in this case we have no long line of decisions one way; there seem to be conflicting decisions; and we must accordingly exercise our own judgment on the question independently, almost, if not quite, of every former decision."

It is to be noticed that one of the authorities which Judge Ruger cited and relied upon in Re O'Neil, 91 N. Y. 522, was the case of Hays v. Harden, 6 Pa. St. 409. He excerpted the following language to show the opinion of the supreme court of Pennsylvania on the subject: "Signing at the end of the will was required to prevent evasion of its provisions." In Baker's Appeal, 107 Pa. St. 361, the court, referring to Hays v. Harden, supra, said:

"In that case there was no reference whatever, in the paper purporting to be the will of John Hays, to the clause which followed. There was no word or mark in the body of the will indicating any intention of the testator at the time of execution that the appended, unattested clause should be drawn to and inserted at any designated place."

The court declared that although the signature of the testator was on the third page, and was followed by writing on the fourth page, it was signed at the end of the will, on the ground that the fourth page was, by referring words, drawn into its place before the end of the will and the signature of the testator. The court held that an extraneous, unsigned writing may, by a force of a clearly-expressed intention in the body of the will, constitute part of the will itself; the reference in the will must be complete and unambiguous; it cannot be aided by extrinsic proof, and that, in whatever order of pages or sheets a will may be written, it is to be read according to the obvious sense and adaptation of its parts; and that it need not be signed at the end in point of space, if so in point of fact. In the case at bar there is no conflict of fact upon the point that the will was executed by the testator in the exact condition in which it was offered for probate, with pages marked "2nd page" and "3rd page," respectively. This whole paper, then, was his will. Courts are not astute to defeat testamentary intentions. Indeed, they are astute to discover methods of supporting them. To hold that the will was not actually signed at its end, when the page on which the signature appears is marked "3rd page," and is preceded by another page marked "2nd page," is to defeat the will of the testator. The highest duty of courts is to ascertain what is just, and many cases may be found where, having ascertained this, the courts have bent their energies to the doing of exact justice, even where a technical reading of a statute might prevent it. I cannot assent to a course which will defeat an instrument which is clearly the will of the testator, until there has been a revision of the point by our court of last resort. I think the decree of the surrogate should be reversed.

WOODWARD, J. (dissenting). I am unable to concur in the conclusion reached by Mr. Justice CULLEN, that the judgment of the court below should be affirmed—First, because I do not think the

objection raised comes within the reason of the law; second, because I do not find in the authorities cited any necessity for going to the length of defeating the intention of the testator. The objection raised is that the will is not executed in conformity with the provisions of the Revised Statutes (2 Rev. St. p. 63, § 40), in that it is not signed by the testatrix and the witnesses at the "end of the will"; and it will be conceded that, if it is not so signed, it is not within the provisions of the law, and is therefore of no effect.

At common law, if a person wrote his name in the body of a will or contract, with intent to execute it in that manner, the signature so written was as valid as though subscribed at the end of the instrument. Merritt v. Clason, 12 Johns. 102. This opened the way to fraud, by permitting any number of disposing clauses to be added after the execution of the will, and to prevent this the legislature enacted that the will "shall be subscribed by the testator at the end of the will." 2 Rev. St. p. 63, § 40. The surrogate before whom the will in question was offered for probate finds as a fact that:

"The will was prepared on a printed blank consisting of a double sheet, the two leaves of which were joined from top to bottom on the left side. The formal opening part of the will was printed on the top of the first page of the paper, leaving the rest of the page blank. The closing part, containing the clause for the appointment of the executor, and what follows, including the attestation clause, was printed on the top of the second page of the first leaf, leaving the rest of that page and the first page of the other leaf blank. The draftsman filled the blank on the first page, and then turned to the first page of the second leaf, and filled that, marking it at the top '2nd page.' He then turned to the page containing the closing part of the will, as above stated, marked it at the top '3rd page,' and completed the instrument, save as to its execution, by filling the blanks at the top of that page, except the blank for the date which was left to be filled at the time of the execution. The instrument was left in the possession of the testatrix, as above stated [for a period of about three months], in the condition above described. At the time of its execution, the date was written in previous to the signing of the testatrix."

The testatrix signed this instrument directly below and immediately at the end of the will as thus prepared, and her signature is followed by that of the witnesses. The only question presented, therefore, is whether it is necessary, as a matter of law, that the pages of a will should be consecutive. If the draftsman had, after completing the first page, turned to the first side of the second sheet and filled that, and had then turned over the page and completed it on the fourth page, there would have been no doubt that the signatures at the end of the will complied with the provisions of the statute. Yet this would have left the actual, physical, consecutive second page blank, and open to all of the opportunities for fraud which the statute aimed to prevent. If the pages had been numbered, there would have been no more propriety in calling the last page the third page, than there was in putting the matter on the back of the first page and calling that the third page. It would simply be an arbitrary designation of the page, and we are unable to find any authority which denies the right of a testator to make such designation. In the case as it is actually presented by the findings of fact made by the surrogate, the draftsman filled up the first page. Find-

ing the printed matter on the second side of that page, and having additional provisions to make, he passed over to the second leaf, and numbered that page 2. When he had filled this page it was necessary to continue the writing, and he was confronted with the question of whether he should pass over, calling the fourth page the third page, or whether he should avail himself of the printed matter upon the second side of the first page, and call that the third page. He chose the latter course, and the end of the will, the third page, is found on the reverse side of the first page, where it is properly signed both by the testatrix and by her witnesses. The pages are not indicated by mere abstract numbers; the draftsman has taken the pains to indicate clearly the order in which the will is to be read by heading the pages "2nd page" and "3rd page"; and I am unable to understand by what process of reasoning it can be held that the signatures appearing on the third and last page of this will are not at the physical end of the will. There is nothing following these signatures, for surely it cannot be held that the "2nd page" follows the page which it is conceded was marked "3rd page" at the time the will was executed. This "3rd page" is blank for more than one-half of its space after the signatures. If any disposing clauses followed upon this page, it would unquestionably destroy the will, but there are no such clauses, the space being entirely blank, while at the very top of the next page we are told by the language of the will, all written at the same time, that it is the "2nd page"; and it is so a part of the same paper that there is no mistaking its relation to the will now under consideration, or the position which it occupies in the formulation of that will. The court in Re O'Neil, 91 N. Y. 516, clearly indicates that where this condition exists the will is not invalidated by the mere physical position of the signatures. In that instance the formal commencement of the will was on the first page; the second and third pages being blank down to the bottom of the third page, which was given up to the formal printed closing. In drawing the will the draftsman filled in the space down to the attestation clause, and when he had reached that point he was in the middle of the thirteenth paragraph. This was continued on the fourth page, the testator and his witnesses signing at the bottom of the third page. The court, in commenting on this state of facts, say:

"The portion of the thirteenth paragraph immediately preceding the printed termination was manifestly incomplete, and the lines written on the fourth page were obviously a continuation of this broken paragraph. The two portions were not, however, sought to be connected by means of a reference, asterisk, words, or symbol indicating the relation to each other."

There were material provisions following the signatures, without being "connected by means of a reference, asterisk, words, or symbol indicating the relation to each other"; and the court held that the testator had not complied with the provisions of the statute, by signing the will at its end. This is obviously a very different case from that presented in the matter now before this court, where the relations of all the parts are clearly and accurately indicated by the distinct paging. The will would not be complete without the last sheet, because there could be no justification for admitting to probate a

will with only two pages, when the last page was distinctly stated to be the "3rd page," while, if the second sheet is retained, its relation to the remainder of the will is distinctly indicated by the statement at the top that it is the "2nd page." All opportunity for fraud is as effectually guarded against as it is possible in a written instrument. The "2nd page" is written full, and the "3rd page" ends with the signatures of the testatrix and her witnesses. In Re O'Neil, supra, the signatures are in the middle of a paragraph; and that paragraph, without anything to indicate that it belonged above the signatures, or that that was its relation to the matter on the third page of the will, was continued on the fourth page. Obviously, a fourteenth paragraph could have been written after it with equal propriety, or a fifteenth; and the signature was not, therefore, at the end of the will, in any sense whatever, although it was in evidence that the signatures were made after the thirteenth clause was finished. "There can be no answer to the proposition," say the court in Re O'Neil, "that to uphold this will is to defeat the object of the statute in requiring a will to be subscribed at the end. The opportunity of adding indefinitely to a testamentary provision will be legalized by so holding," etc. That is not the case in the will now before us, and it is not, therefore, within the reason of the law, or the authority of In re O'Neil.

In Sisters of Charity v. Kelly, 67 N. Y. 409, the only signature proved to be that of the testator was found in the attestation clause, following the signatures of the witnesses, and contained in the body of the paragraph. There was no signature at the end of the will,— merely a declaration, "Subscribed by John Kelly, the testator named in the foregoing will," etc.; the name "John Kelly" being written by the testator, Kelly. In commenting on this failure to sign at the end of the will, the court say:

"The statutory provision requiring the subscription of the name at the end is a wholesome one, and was adopted to remedy real or threatened evils. It should not be frittered away by exceptions."

The court then say (and it is important to bear this in mind) that, "while its provisions should not be carried beyond the policy of the framers of it, that policy should not be defeated by judicial construction." Within the rule in this case, there is no reason for saying that a will consisting of three written pages, the last two pages being distinctly numbered as the "2nd page" and "3rd page," is not signed at the end, when it is subscribed at the finish of the written matter upon the "3rd page." To illustrate, suppose that the will had been written on three separate sheets of paper, the signatures appearing upon the numbered "3rd page," that these had been gathered up and fastened together at the top with a seal, and when the instrument was offered for probate it should appear that the third page had been placed immediately after the first page, and the second page was last. Would any one attempt to say that the will was not signed at the end? Yet, assuming the pages to be numbered "2nd page" and "3rd page," as in the will now under consideration, would there not be just as many opportunities for fraud, by inserting provisions under fractional page numbers? In Re Conway,

124 N. Y. 455, 26 N. E. 1028, the paper offered as a will consisted of a single sheet, about the size of a legal-cap page. The formal opening and closing clauses of the will were upon the first page. In drawing the will the scrivener filled up the blank space between the opening of the will and the testimonium clause. At the end of the third devise, in parentheses and underlined, were the words "Carried to back of will." Upon the back of the will, in parentheses and underlined, was the word "Continued." Then followed bequests of personal property, filling the entire back of the will, and at the end were found the words "Signature on face of will." The signatures were placed upon the first page in the blanks provided in the printed form, and obviously were not at the end of the will. In this case the court, after calling attention to the fact that the object of the statute is "to surround testamentary dispositions with such safeguards as will protect them from alteration," say, "It is likewise true that in this will, as well as O'Neil's, the actual physical termination of the will is not at the place where the testator subscribed his name." It then calls attention to the fact that there is no way of protecting the testator as contemplated by the statute, if the will may be indefinitely extended by simply writing upon the face of a will, before the signatures, "Carried to back of will," and referring at the end of the back page to the signatures on the front. "If," say the court, "by preceding the testimonium clause with the words 'Carried to back of will,' all that is written thereon may be made a part of the will, what is to prevent making another sheet a part of it, also, by writing on the bottom of that page 'Continued on sheet one,' and so on until any number of sheets of paper with testamentary provisions thereon be made a part of the instrument which is signed on the first page?" This case, to my mind, affords no authority for holding that the will now before us is not signed at the end, because the pages are not in consecutive order. "The instrument offered," say the court in Sisters of Charity v. Kelly, supra, "is to be scanned, to learn where is the end of it as a completed whole; and at the end thus found must the name of the testator be subscribed." If we scan this will, we shall find that it is an instrument of three pages; that each of the pages, after the first, is distinctly indicated; and that the "end of it, as a completed whole," is on the page indicated as "3rd page." At this point the signatures appear, and in my opinion the requirement of the statute has been fully met.

In Re Whitney, 153 N. Y. 259, 47 N. E. 272, as in Re Conway, supra, the will is drawn upon a printed blank, covering only one page, and the testator and subscribing witnesses signed at the foot thereof. The subdivisions of the will marked, respectively, "First" and "Second," fill the entire blank space in the printed form; and at the end of the second subdivision are the words "See annexed sheet." On a separate slip of paper are written two additional subdivisions, marked, respectively, "Third" and "Fourth," and this is attached to the face of the will, immediately over the first and second subdivisions, by metal staples, so that the slip annexed has to be raised up or turned back in order to read the first two clauses. The court calls attention to the obvious fact that the signatures are not at the

end of the will, and that the slip of paper annexed by means of metal clasps might be removed and another paper substituted, without running any risk of detection, and that "the only reference to the annexed slip is in the will, and the paper attached contains no word or sign to connect it with the main instrument." Clearly the decision in this case cannot be controlling in the case at bar, where the "2nd page" is an integral part of the paper on which the will is written, and where its proper relation to the whole instrument is distinctly indicated by the definite paging.

The legislature has not attempted to prescribe rules which should make fraud impossible. It has simply sought to lay down broad general rules which shall reduce the probabilities of fraud to a minimum, and among these it is provided that the testator's signature must be at the end of a will; and we are not called upon to give construction to this rule beyond the point which it is reasonable to suppose the legislature intended. It is true, of course, that by means of fractional paging the will before us might be added to; but it is equally true that, if the will had been finished on the fourth page of the sheet, the second page might have been called $1\frac{1}{2}$, opening an equal opportunity for fraud. It is likewise true that the spaces between paragraphs in a will might be so wide as to admit of new clauses or new paragraphs, and there are almost endless ways by which forgery may be committed; but the legislature, aside from its original statutes, has not sought to deal with these, and there is no reason why this court should extend the rule beyond the policy of the law, and defeat the purposes of the testatrix in the case at bar simply because she has not followed the consecutive order of paging. The opportunities for fraud are no greater in this will than in any other, the signatures are immediately following the last words of the will,. and, in my opinion, there is no authority, either in the statutes or in any of the adjudicated cases, which calls for the affirmance of the judgment of the court below. I am of opinion that the judgment should be reversed, and that the will should be admitted to probate.