## In re MURPHY'S WILL.

(Supreme Court, Appellate Division, First Department. February 23, 1900.)

1. WILLS—PROBATE—PARTIES.
   Where a next of kin of testator, contesting the probate of a will, is accorded a full hearing, he is not prejudiced by the failure to bring in other heirs and next of kin.

2. SAME.
   Testimony that a testator had two cousins, but that they had not been heard from for 20 years, is not sufficient to make it necessary that they be looked up and brought in, on a proceeding for the probate of the will.

3. SAME—OBJECTIONS.
   The failure to bring in relations of testator in proceedings to probate the will is not ground for reversal, where there was no request that they be brought in.

4. SAME—EXECUTION.
   A will drawn on a printed form is valid, although a large blank space is left in the middle, without being ruled off.

5. SAME—UNDUE INFLUENCE.
   Testator, an old man in good health and of sound mind, requested an attorney to come to his house to draw his will. After it was drawn according to instructions, it was read in the presence of the attorney's son and the testator, who expressed himself satisfied with it, and executed it in the presence of witnesses who were then called in. The attorney who drew it kept it in his safe until testator's death, 19 months thereafter. The provisions of the will were not unnatural; contestant, who was testator's only relation, receiving half the property. The entire property was disposed of. *Held*, that the circumstances did not show fraud or undue influence, although the attorney who drew it was one of the principal beneficiaries.

Appeal from surrogate's court, New York county.

Appeal by John Kelly, a cousin of William Murphy, deceased, from a decree (59 N. Y. Supp. 1078) admitting to probate a paper propounded as the last will and testament of said William Murphy. Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, McLAUGHLIN, PATTERSON, and O'BRIEN, JJ.

David McClure, for appellant.

Maurice Rapp, for respondent.

BARRETT, J. The appellant here presents three points upon which he asks a reversal. The first is that there was a defect of parties to the proceeding in the surrogate's court, and that the instrument should not have been admitted to probate until the necessary parties had been brought in. This point is without merit. The appellant asked the learned surrogate to find that he is the only known next of kin and heir at law of the deceased, and he excepted to the refusal to so find. In the original petition, upon which probate was invoked, it was alleged that there were no heirs at law or next of kin of the deceased testator. The appellant thereupon filed his petition, claiming to be a cousin of the testator, and praying to be allowed to intervene. Testimony was taken preliminarily upon this petition; and thereupon, before the real contest was commenced, the surrogate

decided that the appellant was an heir at law and next of kin of the testator, and entitled to be heard in the matter of the probate of the will. He was accordingly heard throughout. It is difficult to appreciate the point that, as a contestant, he may be prejudiced by the failure to bring in other heirs at law and next of kin. His contest has been fully heard, and could not have been affected by the presence of other parties. But there were no other parties to be brought in. The appellant's contention that there were is based wholly upon the fact that in proving his own status he incidentally testified that the decedent had two other cousins, named John and Jeremiah Hogan. But he added that he had not heard from John in 30 years, nor from Jeremiah in 20. No suggestion was made that these people or their heirs should be looked up and brought in. On the contrary, the surrogate, as we have seen, was asked, in substance, to find that they were not heirs at law or next of kin of the deceased. Even if it had appeared, however, that these people were alive, their absence could not have affected the contest between this contestant and the proponent. Nor would the failure to bring them in as parties, in the absence of any request or just claim of prejudice, be ground of reversal. There is, in fact, nothing whatever upon the record which brings this point before us for review.

The second point is that the will was not properly executed, under the laws of this state. Upon that head the surrogate made the following finding of fact:

"(11) The instrument propounded as the last will and testament of said decedent was drawn upon a printed blank, consisting of four pages of foolscap, with the fold upon the left side. The said instrument, from the commencement thereof down through the words 'I give,' in the first paragraph thereof, is printed, excepting the words 'William Murphy.' Then follows, in writing, the portion of the instrument beginning with the words 'and bequeath,' through and including the words 'if any,' and all of which are found on the first page of the blank. Following the words 'if any,' there is a space at the bottom of the first page of a little over four inches, which contains no writing or printing of any kind; nor is the same ruled up in any way. The second page is entirely blank, and is not ruled up. The third page is blank down to the middle thereof, and is not ruled up. Then follows the remainder of the instrument, partly in print and partly in writing."

To a clear understanding of this finding, the part of the will found upon the first page of the paper should be given. It is as follows:

"I, *William Murphy*, being of sound and disposing mind and memory, and considering the uncertainty of this life, do make, publish, and declare this to be my last will and testament, as follows, hereby revoking all other and former wills by me at any time made. First, after my lawful debts are paid, I give *and bequeath unto my executor hereinafter named the sum of five hundred dollars in trust to be expended by him for masses for repose of my soul in churches of Our Lady of Good Council and Saint Lawrences. I give and bequeath to Catharine Cosgrove one thousand dollars, and all furniture, clothing, and bedding of which I may die possessed. The balance of my property, real, personal, or mixed, I leave as follows: To my friends John Kelly and Joseph Martin, to be divided equally between them. I hereby direct that, in case either the said John Kelly or Joseph Martin die before me, then the sums which would descend to them shall be given to the heirs of either of them; that is to say, to the heirs of the one who may die before me. I hereby authorize and empower my executor hereinafter named to mortgage, sell, or dispose of any real property of which I may die possessed, at any time he may see fit; but, if mortgaged, said mortgage not to exceed expiration of lease on said property, if any.*"

The written part we have italicized. What is not italicized is print-
ed. The rest of the will appears upon the third page, commencing
about the middle thereof. It reads as follows:

"I hereby appoint *Joseph Martin* to be *executor* of this, my last will and tes-
tament, *and I hereby direct that my said executor shall not be required to fur-
nish any bond.*

"In witness whereof, I have hereunto subscribed my name and affixed my
seal the *eleventh* day of *July* in the year one thousand *eight hundred and nine-
ty-seven.*      *William Murphy.* [L. S.]

"Witnesses:
     "*Frederick E. Keppler.*
     "*Henry L. Lavery.*
     "*W. J. Martin.*

"Subscribed by *William Murphy,* the testator named in the foregoing will, in
the presence of each of us, and at the time of making such subscription the
above instrument was declared by the said testator to be *his* last will and tes-
tament; and each of us, at the request of said testator, and in *our* presence and
in the presence of each other, signed our names as witnesses thereto.
     "*Frederick E. Keppler,* residing *245 E. 75 St.*
     "*Henry L. Lavery,* residing *170 E. 87 St.*
     "*W. J. Martin,* residing *10 East 86 St., N. Y. City.*"

Here, again, we have italicized what is written. The rest is what
is printed.

The point made against the due execution of the will is, not that
part of the instrument is written and part printed, but that there are
the three blank spaces, which are pointed out in the quotation from the
findings, namely, the space at the bottom of the first page, the whole
of the second, and the upper part of the third. We know of no au-
thority which would deny probate to a will because blank spaces of
this character have not been ruled off. Where the fold is at the top
of the instrument, and not at the side, it is quite common to write the
will upon the front of each sheet. It is, of course, better and safer in
that case to rule off the back of each page before proceeding to write
upon the next sheet; but there is no such requirement in the statute,
or in any rule which has been laid down by the courts. Still less is
there any such requirement where the fold is at the side of the instru-
ment. The only difference is that in the latter case the printed blank
consists of four connected pages, requiring no separate fastening upon
the side, while in the former the sheets are separate, and must be
fastened at the top by ribbon, metal clasp, mucilage, or other object.
The cases cited by the appellant relate either to blank spaces inter-
vening between the end of the instrument and the subscription, or to
provisions following the subscription. In re O'Neil's Will, 91 N. Y.
516; In re Whitney's Will, 153 N. Y. 259, 47 N. E. 272; In re An-
drews' Will, 43 App. Div. 394, 60 N. Y. Supp. 141; In re Fults' Will,
42 App. Div. 593, 59 N. Y. Supp. 756; In re Conway, 124 N. Y. 455, 26
N. E. 1028. The practical question in these cases was whether the
will was subscribed at the end thereof, as required by the statute.
There is no such question here. Nothing here intervenes between the
end of the instrument and the testator's signature. The blank spaces
between the earlier and the later provisions of the will may have some
significance with respect to other questions, but they are not crucial
upon the question of due execution.

The third point presented by the appellant is that the paper propounded is invalid because executed through the fraud or undue influence of the draftsman, who was the legal adviser of the testator. There is not a particle of direct evidence here of fraud or undue influence. We are asked to infer it from the surrounding circumstances, coupled with the fact that the attorney who drew the will was one of the residuary legatees. It is well settled that a person of sound mind, acting with full knowledge of his affairs, competent to understand his relations to those whom he wishes to benefit, may bestow his bounty as he likes, and no presumption of unfair dealing can arise, although one of the beneficiaries happens to be his attorney. Loder v. Whelpley, 111 N. Y. 239, 250, 18 N. E. 874. See, also, Post v. Mason, 91 N. Y. 539; Coffin v. Coffin, 23 N. Y. 9; Parfeitt v. Lawless, L. R. 2 Prob. & Div. 462. As was said by Baron Parke in Butlin v. Barry, 1 Curt. Ecc. 637:

"All that can truly be said is that if a person, whether an attorney or not, prepares a will with a legacy to himself, it is, at most, a suspicious circumstance, of more or less weight, according to the facts of each particular case; in some of no weight at all; * * * varying according to circumstances,— for instance, the quantum of the legacy, the proportion it bears to the property disposed of, and numerous other contingencies."

, In support of the rule laid down in Loder v. Whelpley, supra, In re Smith, 95 N. Y. 523, was there cited. In the latter case Judge Andrews said:

"It has been held that the fact that the beneficiary was the guardian, attorney, or trustee of the decedent does not, alone, create a presumption against a testamentary gift, or that it was procured by undue influence."

It is true that the learned judge then proceeded to show that the special circumstances of that case were such as to call for explanation, and to impose upon the proponent the burden of satisfying the court that the will was the free, untrammeled, and intelligent expression of the wishes and intention of the testatrix. We have carefully considered the special circumstances there referred to, and have compared them with the circumstances of this case; and, while in some respects they are alike, they vary in so many and in such essential particulars that the same burden should not here be imposed upon the proponent. There is nothing, in fact, in the circumstances of this case to warrant the court in refusing to apply to it the ordinary rule that undue influence must be proved by the party who charges it, and that the fact that the beneficiary was the attorney of the deceased, and drew the will, does not, alone, create a presumption against the testamentary gift. The testator had no relatives who had any special claim upon his bounty. Mr. Murphy was, it is true, quite an old man; but he was in fair physical and mental condition, and he perfectly understood what he was talking about and what he was doing. He lived for 19 months after the will was executed. He attended to his affairs and was active up to within 10 weeks of his death. It was by previous appointment that the attorney and the latter's son called upon him for the purpose of drawing the will. When they so called, the instructions were given, and the will was then drawn by the attorney in the presence of his son and of the

testator; and it was read over to the testator, who expressed satisfaction therewith. After it was so drawn, read over, and approved, the attorney's son went out to get witnesses. The will was then lying upon the table in front of the testator. Upon the son's return with the witnesses, the will was still lying open upon the table. It was then executed. All the forms of law were complied with, and the witnesses observed nothing about the testator suggestive of an unsound mind or of restraint. The attorney took the completed and duly-executed instrument with him, and kept it in his safe until the testator's death. The testator could have sent for it any time, had he desired to reconsider or to inspect its provisions. Even if this case were within the rule to which we have referred, namely, that laid down in Re Smith, supra, and if its special circumstances were substantially equivalent to the special circumstances of that case, we still think that the proponent has met the burden which the application of that rule would have imposed upon him,—of satisfying the court that the will was the free, untrammeled, and intelligent expression of the wishes and intention of the testator. The provisions of the will were not unnatural. The contestant was not a cousin one degree removed, and he receives one-half of the property. He evinces a somewhat grasping spirit in demanding it all. As to the charge of fraudulent insertion of the gift to the attorney, the contest is hopeless. When we consider that the will was complete where the writing on the first page stopped; that nothing by way of devise or bequest could have been added to it which would not have conflicted with the gift of the testator's entire residuary estate already made; when we consider, too, that the will was for a considerable space of time lying open upon the table in front of the testator, and that fraud in the reading of it could have been readily detected,—any possible suspicion arising from the blank spaces is reduced to a minimum. While we do not approve of the conduct of the attorney in drawing this will, under which he was to benefit considerably, he cannot, upon the evidence before us, be justly charged either with the exercise of undue influence upon the testator, or with the fraudulent insertion in the instrument of the gift to himself. We have not overlooked the testimony of the witnesses called by the contestant. The testator's housekeeper, Mrs. Cosgrove, and his tenant, Henschell, undoubtedly testified to declarations both as to his prior intentions, and his consummated testamentary dispositions, inconsistent with the gift to the proponent. But this testimony was loose and inconclusive. It was, like admissions, of a character which should not lightly be permitted to outweigh substantial facts. And, in the case of the housekeeper, it was so confused and contradictory that the surrogate was quite justified in disregarding it altogether. Upon the whole, our conclusion is that the decree of the surrogate is right, and should be affirmed, with costs. All concur.